UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT FIREBAUGH and | ) | |
| STELLA FIREBAUGH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08-CV-01161 ERW |
| | ) | |
| 3M COMPANY, AS SUCCESSOR BY | ) | |
| MERGER TO MINNESOTA MINING | ) | |
| & MANUFACTURING COMPANY | ) | |
| AND/OR ITS PREDECESSORS/ | ) | |
| SUCCESSORS IN INTERST | ) | |
| MINE SAFETY APPLIANCES | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MOTION TO COMPEL DISCOVERY RESPONSES AGAINST MINE SAFETY
APPLIANCES ("MSA")**

Plaintiff files this Motion to Compel Discovery and requests this Court to grant

the Motion.

**I. HISTORY OF DISCOVERY**

**A. Written Discovery**

1.      Plaintiffs had drafted this Motion to Compel and forwarded a copy to the

Defendants on December 21, 2009, requesting that the Defendant's discovery be

answered without the necessity of filing this motion. *See Exhibit 1*[1]  The Defendant did

not respond.  Plaintiffs' forwarded a second letter to Defendants asking the Defendant

when it was going to respond to written discovery. *See Exhibit 2*  Defendant's did not

---

[1] This discussion is jointly occurring in a companion cases, *David Midkiff v. 3M*, pending in Judge Sippels court, *Robert Savage v. 3M*, pending in Judge Shaw's court; *Olen Midkiff v. 3M*, pending in Judge Stohr's court; *Carl Scaggs v. 3M,* pending in Judge Webber's court and *Robert Firebaugh v. 3M*, pending in Judge Webber's court.

respond.  Plaintiffs' wrote the Defendant again on January 25, 2010, attempting to obtain responses to discovery, still no response.  *See Exhibit 3*   Plaintiffs again requested responses to discovery on March 11, 2010.  *See Exhibit 4*   Again, no response from MSA.[2]  In between all of these letters, there have been numerous personal conversations where the Defendant's counsel represented that they were working on these matters.

**B. Corporate Representative**

2.      In order to be prepared to take the deposition of the Defendant's corporate representative, now noticed for April 19, 2010, Plaintiff needs adequate responses to this discovery.  Plaintiff first requested the deposition of Defendants corporate representative on February 16, 2010.  MSA did not respond to this request.  *See Exhibit 5*  Plaintiff wrote a follow-up letter to Defendants on March 11, 2010 requesting dates for Defendant's corporate representative.  *See Exhibit 4*   Again, no dates were offered. Plaintiff then noticed the corporate representative on March 17, 2010 and indicated a willingness to reschedule the deposition.  *See Exhibit 6*   MSA responded indicating a conflict with the day noticed but never provided any dates. *See Exhibit 7*

3.      Because no dates were ever provided by Defendants, Plaintiff noticed the deposition of Defendant's corporate representative for April 19, 2010.  However, because the Defendant refuses to provide adequate responses to written discovery, Plaintiffs' file this Motion to Compel and request that answers to Interrogatories and Request for Production be provided on or before April 16, 2010.  Plaintiffs have tried to be patient and professional about this but has simply gotten no cooperation.

---

[2] MSA's National Counsel, also located in Houston, Texas, did forward a disc with some documents in February but it was explained that this production did <u>not</u> represent a formal production in this case. Plaintiffs' are unclear on the meaning of this representation.  There has been no response, in this case, to Plaintiffs' discovery and MSA's National Counsel has not appeared in this case.

## II.     BACKGROUND

4.      MSA manufactured the MSA Dustfoe 66 from the late 1940's until the early 1980's.  The MSA Dustfoe 66 is a dust, fume and mist respirator certified by the National Instituted for Occupational Safety and Health ("NIOSH") and its predecessor agency the Bureau of Mines ("BOM").  As part of the government certification process, MSA was required to perform testing on these respirators, maintain quality control plans, and correspond with NIOSH officials regarding the performance specifications of this respirator. 30 C.F.R. part 11 (1972-1994)[3]  Plaintiff's discovery, and this commensurate motion to compel, are aimed at obtaining copies of MSA testing material on this respirator.

5.      Attached as Exhibit 8 & 9 are copies of Plaintiffs Interrogatories and Requests for Production.  MSA objected to every request and question and has provided no document or responsive answer, of any kind, to any of Plaintiff's inquires.  MSA has included in its response the standard boilerplate objections indicating the request or question is overbroad or unduly burdensome.

6.      This material is relevant because in this case the Plaintiff used the MSA Dustfoe 66 for respiratory protection for a significant period of time while employed at the ISP Inc., a shingle manufacturing facility in Annapolis, Missouri. Plaintiff was employed at ISP (or its predecessor) from the 1960's until 2003.  However, Plaintiff's request for documents is limited in scope from 1960 – 1980, the general time period Plaintiff actually used the Dustfoe 66 before switching to another respirator in the 1980's.

---

[3] MSA has argued in its objections that "these testing protocols utilized by these government agencies for the various time periods and products changed over time."  See Answer to Request No. 18.  MSA is wrong. 30 C.F.R. part 11, which outlines these testing protocols remained unchanged between 1972 and 1994.  The only changes which might have occurred took place between 1971 and 1972 when BOM transferred regulatory authority to NIOSH.

7.      Plaintiff has brought this action as a result of his contraction of an occupational lung disease known as silicosis. The fundamental allegation of Plaintiff's case is that the MSA Dustfoe 66 leaked while he properly used the respirator during his course of work at the ISP plant.  Plaintiff has brought this action as a product liability claim pursuant to Section 537.760 of the Missouri Annotated Statutes.  Section 537.760 defines a product liability action in this state as follows:

> [T]he term "products liability claim" means a claim or portion of a claim which the Plaintiff seeks relief in the form of damages . . . because:
>
> (1)      The defendant, wherever situated in the chain of commerce, transferred the product in the course of his business; and
>
> (2)      The product was used in a manner reasonably anticipated, and
>
> (3)      Either or both of the following:
>
>         (a)      The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use . . . or
>
>         (b)      The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without adequate warning.

*See, Mo. Ann. Stat. § 537.760 (2009).*

8.      It is in the context of this product liability claim, the parameters of which are described by Missouri statute that Plaintiff propounded the attached discovery. Therefore, Plaintiff's discovery requests for testing data, quality control data, field testing, fit test studies are aimed at evaluating the performance of this mask for its intended purpose.  These data are both relevant and material to the Plaintiff's core

product liability allegations under Missouri law.   Moreover, an extensive federal regulatory framework dictated that a variety of these tests be performed by the Defendant.[4]

9.      The scope of document requests and other discovery under Rule 34 is the broad discovery available under Rule 26.  *Del Campo v. Kennedy,* 236 F.R.D. 454 (N.D. Cal. 2006).  Generally, *any relevant, non-privileged document is discoverable* unless it was prepared in anticipation of litigation, pertains to expert witness, or would be unreasonably burdensome to produce.  A party served with a document request must serve a written response or move for a protective order under Rule 26(c).  Otherwise, the party will be subject to the sanctions in Rule 37(d). (Emphasis added). *Huggins v. Federal Express Corp.*, 250 F.R.D. 404 (E.D. Mo. 2008).  Accordingly, the Plaintiffs move to compel discovery of these items.

## A.      Request for Production No. 18.

10.      Request No. 18 is the pivotal question in Plaintiff's requests for production because it requests a variety of classes of testing data from 1960 to 1980 for the MSA Dustfoe 66.   MSA has objected to request 18 as "overbroad, unduly burdensome" and "irrelevant" and claims that "testing protocols" utilized by these government agencies "changed over time" and are readily available in the public domain. However, the regulations in question which govern the Dustfoe 66 dictate that the testing data requested be performed by MSA.  This is not information maintained in the public domain, it is information exclusively under the control of MSA.

---

[4] It is also not unduly burdensome to produce documents this old.  The Dustfoe 66 has been the subject of product liability litigation for decades and produce items such as the documents attached as exhibits 10, 11 & 12 in previous litigation to the undersigned.  See, Exhibits 10, 11 & 12. This litigation was presented in the 1980's.

11.     The request includes a request for quality control tests.  Pursuant to 30 C.F.R. 11.41 (b), MSA was required to create and maintain "a procedure for the selection of a sample of respirators and the components thereof for testing." 30 C.F.R. § 11.41 (b). Consequently, MSA was required to perform quality control tests and Plaintiff requests those records so it can assess whether the Dustfoe 66 remained in compliance with its own quality assurance plan and its federal regulatory approval.

12.     The requests also ask for "certification and/or approval tests."  Pursuant to 30 C.F.R. § subpart K, MSA was required to obtain approval of this respirator pursuant to minimum design requirements outlined by this subpart.  Subpart K outlines that the minimum level of protection be at a level not less that .05 milligrams per cubic meter; *see,* 30 C.F.R. § 11.130 (b); the respirator have designed exhalation and inhalation valves that prevent leakage and also adhere to a minimum breathing resistance requirement of 20 ml; *see* 30 C.F.R. §§ 11.137, 11.140-9 and the respirator must pass a ninety (90) minute silica test with no greater than 1.5 millimeters of penetration; *see* 30 C.F.R. § 11.140.  MSA is obligated by regulation to perform these tests and maintain a quality control plan.  This data is relevant to the performance and design of the respirator and MSA should produce the documents.

13.     Request 18 also asks for "fit test studies."  Fit testing is a central component to respirator design.  Workers are required to perform a daily fit test on their respirators pursuant to OSHA regulations.  Likewise, employers are required to perform annual quantitative fit testing on respirators to insure worker protection.  *See,* 29 C.F.R. § 1910.134 (3) (5) (i) & (ii).  Because of these regulatory requirements, the standard of care in the industry and regulation requires that respirators be subject to quantitative and

qualitative "fit testing." *See, American National Standard Institute (ANSI), Practices for Respiratory Protection,* Z88.2 § 7.4 (1969), incorporated by reference by 30 C.F.R. § 11.4. Regulations therefore required MSA to "fit test" their respirator pursuant to Section 7.4 of the ANSI standard. Such testing is certainly relevant regarding the issue of worker protection.

14.     Finally, Request No. 18 requests laboratory testing which is not specified by the previous categories. MSA's independent testing of the respirators, either through field studies of actual use, laboratory studies which may vary from federal regulation, is absolutely necessary for the evaluation of the performance of the Dustfoe 66 and is directly relevant to this product liability claim for design defect. Accordingly, these documents should be produced.

**B.     Request for Production Nos. 19, 20, 37, 41 & 46.**

15.     In the context of maintaining approval status to market the Dustfoe 66, MSA was required to maintain a quality control plan (Request 37) and insure compliance with that plan (Requests 19 & 20). Requests 19, 20 & 37 request a copy of all quality control manuals for the Dustfoe 66 and any and all reports or summaries relating to or discussing the compliance with the plan or discussion of quality control reports and results. Quality control compliance is critical to maintaining approval status for the sale of a respirator. 30 C.F.R. § 11.43 (c) provides as follows:

> (c)     MESA and the Institute reserve the right to jointly revoke, for cause, any certificate of approval where it is found that the applicants quality control test methods, equipment or records do not insure effective quality control of over the respirator for which approval was issued.

30 C.F.R. § 11.43 (c).  Based upon the above provision, MSA was required to remain in compliance with the testing criteria upon which the Dustfoe 66 was approved through a quality control plan and sample testing.  It is likely that summaries of this testing were compiled to determine compliance with the quality control plan.  The regulation also required that MSA produce less than 1% of its masks with "Major A defects"; and less than 2% of masks with "Major B defects."  30 C.F.R. § 11.41 (d) (2) & (3).  It is unlikely that MSA could have made a determination of the percentage of these defects without summarizing the results of samples taken under the quality control reports.  Therefore, these summaries are directly relevant in determining compliance with quality control plans and maintaining certification under the NIOSH regulations.

   **C.**  **Request for Production No. 21, 23 & 27**

  16.  Mine Safety Appliances published trade journal advertisements, pamphlets, brochures, instructions and packaging relating to the Dustfoe 66.  Such information is relevant because it illustrates the intended use and purpose of the respirator, based upon the representations of the manufacturer, MSA.  Advertisements and marketing material are clearly relevant in a context of a product liability action which alleges product design and marketing defect.

   **D.**  **Request for Production No. 23 & 24.**

  17.  Federal regulations further require that as part of the application process for approval of a respirator that a full scale reproduction of approval labels and markings be submitted for approval. *See, 30 C.F.R. § 11.33.*  These items are clearly relevant and discoverable to determine if the representations made in packaging and labeling were consistent with the representations made in the approval process.  Furthermore, as part of

an application for approval, MSA is required to submit a written description of the respirator together with all drawings and specifications relating to the respirator. *See, 30 C.F.R. § 11.11.* The technical specifications, drawings and instructions submitted to NIOSH for approval are clearly relevant in this case relating to product design defect and marketing defect.

### E.   Request for Production No. 25.

18.   A classic request in any product liability question is all files, correspondence or records relating to complaints about the product. This Dustfoe 66 was generally known to be subject of complaint. For example, NIOSH, the government approval agency, complained about the performance of the Dustfoe 66. *See, Exhibit 10, MSA correspondence with NIOSH, March 3, 1973.* MSA received documented complaints about the Dustfoe's performance and these items are directly relevant in a product liability action.

### F.   Request for Production No. 26.

19.   This request asks for position papers relating to regulations which may influence the Dustfoe 66. Such a request may reveal the state of mind of MSA with regard to its inability to comply with approval/certification regulations and/or potential problems with compliance with federal regulations. The relevance of such documents relates to MSA's state of mind regarding its view of the efficacy of the federal regulations in providing minimum standards for a safe operating respirator.

### G.   Request for Production No. 28 & 30.

20.   The request for a list of all passed silica claims relates to a number of issues relevant to this case. The MSA Dustfoe 66 has been the subject of hundreds, if not

thousands, of product liability lawsuits.  If MSA has destroyed any of the requested documents which are the subject of this litigation while other similarly situated lawsuits were pending, the issue of spoliation of evidence is raised.  Furthermore, the extent and time of litigation against MSA goes to the issue of notice, and when it first became aware of formal allegations or complaints against its product.

**H.      Request for Production Nos. 29, 31, 32, 33, 34.**

21.     These requests all relate to the issue of warnings associated with the Dustfoe 66.  What the warnings are and the circumstances and foundation for which they were developed are critical to Plaintiffs case.   Section 537.760 (b) of the Missouri Annotated Statutes specifically directs that one element of a product liability action is damage caused by inadequate warnings.  Plaintiff is entitled to explore fully the method of formulation and foundation for any warnings that accompanied the Dustfoe 66.  This information is fundamental to any product liability action.

**I.      Request for Production No. 38, 39, 42.**

22.     These requests are aimed at obtaining all communications from NIOSH and BOM regarding the Dustfoe 66.  As reflected by Exhibit 10, 11 & 12 NIOSH did have communications and or meetings with MSA and NIOSH wrote internal memorandums about the Dustfoe 66 which were previously produced by MSA.  This correspondence and memoranda are important in exploring the deficiencies which were apparent to government officials regarding the Dustfoe 66 and MSA's response to these deficiencies, including whether MSA ever communicated these problems to its customers. Since NIOSH and BOM were the agencies charged with approving this

respirator, the government's position regarding the efficacy of this device is directly relevant to this product liability claim for design and marketing defect.

**J.      Request No. 44 , 45 & 48.**

23.      Records already produced from ISP, the Plaintiff's employer, indicate that sales representatives from respirator companies may have visited this company attempting to market the product or actually participating in the training of employees. Request 44 is aimed at obtaining any documents which reflect who these individuals may have been.   Identification of such individuals is relevant because the actual representations made by MSA regarding the performance capability of the Dustfoe 66 could be discovered.  Such representations are directly relevant to a Missouri product liability claim.  *See,* Missouri Code Ann. § 537.760.

**III.     Interrogatories**

24.      Similarly, MSA wholly failed to answer even one interrogatory, again claiming all questions were overbroad and unduly burdensome.  Review of the questions reveals that none of the interrogatories are improper in this product liability action.

**A.      Question 1 & 2**

25.      Questions 1 & 2 ask MSA to identify any retailers or sales persons who may have sold MSA equipment in the Annapolis, Missouri area.  This request is directly relevant to identify persons who made direct representations about the performance capabilities and intended uses of the Dustfoe 66.  Furthermore, such information may confirm that sales of the product were made at the ISP plant.

**B.     Question 3 & 4**

26.     These interrogatories ask MSA to identify the persons who developed the Dustfoe 66 and who provided instructions for the product.  The identity of these individuals is clearly relevant for purposes of the Plaintiff's allegations of product liability in this case.

**C.     Question 6**

27.     These questions ask MSA to identify each date it sought approval from NIOSH or BOM for the Dustfoe 66.  Approvals are not static.  Any time a product is modified or changed, it must obtain an approval for the change.  This information will illustrate when modifications were made to the Dustfoe 66 and the nature of these modifications.  Modifications and changes to a product are directly relevant in a product liability action.

**D.     Questions 7, 8 & 9.**

28.     These questions ask MSA to identify whether it conducted certain classes of studies on the Dustfoe 66 and when those studies were conducted.  Such studies directly relate to the performance of the Dustfoe 66 and are directly relevant in this product liability action

**E.     Question 10**

29.     This question asks MSA to identify trade and professional associations which it or its employee representatives have joined.  The membership of MSA in various trade organizations may lead to the discovery of admissible evidence in evaluating the knowledge, standards and state of the art of the industry, all of which are relevant in a product liability action.

**IV.      Prejudice**

Deadlines are quickly approaching in this litigation and the Plaintiffs experts need to review documents produced by the actual custodian of records of MSA.  If MSA does not produce these documents on a timely basis, the prosecution of Plaintiffs claim will be greatly prejudiced.  Plaintiffs assert this motion so that justice may be done.

Respectfully submitted,

MALONEY * MARTIN, L.L.P.


/s/ Mike Martin
MIKE MARTIN
#5200604
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, TX 77019
Telephone: (713)759-1600
Facsimile: (713)759-6930


Zane Cagle
MO #53775, Fed. #499604
1232 Washington Ave, Ste 220
St. Louis, MO  63103
Telephone: (314)241-4555
Facsimile: (314)241-4556


**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 3.04(A) I certify that on December 21, 2009, January 6, 2010, January 25, 2010 and March 11, 2010, I attempted to obtain a response to this matter from the Defendant MSA by way of correspondence.  *See attached Exhibits 1-4* There have also been intermittent oral conversations where I also asked MSA to comply with my request to fully answer discovery.  Some documents were forwarded to me on a disc by MSA's National Counsel but with an explanation that they did <u>not</u> represent an answer to discovery in this case.  MSA's National Counsel has not appeared in this case. I have received no response to my inquiries from any counsel of record in this case regarding discovery responses.  In fact, I did not receive a response to even one of my letters with regard to this motion.  I have had several personal conversations at depositions and by telephone where the Defendant's counsel indicated they were working on answers to interrogatories and request for production.  At this point, attempts to obtain any real answers to discovery are futile.

/s/ Mike Martin
MIKE MARTIN

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing document has been provided to all counsel of record and/or attorneys-in-charge via Certified Mail, Return Receipt Requested, and/or via facsimile, and/or via hand delivery, and/or via U.S. Mail on this the   6th    day of April, 2010.

/s/ Mike Martin
MIKE MARTIN