UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT FIREBAUGH, and ) <br> STELLA FIREBAUGH, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>   vs. ) <br> ) <br> 3M COMPANY, and ) <br> MINE SAFETY APPLIANCES, ) <br> ) <br>     Defendants. ) | Case No. 4:08CV01161 ERW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment Against Mine Safety Appliances ("MSA") Based Upon Negligence Per Se [doc. #71].

**I.    PROCEDURAL BACKGROUND**

On August 8, 2008, Plaintiffs Robert and Stella Firebaugh filed suit against 3M Company ("3M") and Mine Safety Appliances Company ("MSA").[1] Plaintiffs' Complaint [doc. #1] alleges various causes of action against 3M and MSA, including product liability, breach of warranty, and negligence. All of these claims arise out of Plaintiff Robert Firebaugh's use of respirators manufactured by 3M or MSA while employed at ISP Corporation, where he was continuously exposed to silica dust. On July 30, 2010, Plaintiffs filed the pending Motion for Partial Summary Judgment Against MSA Based Upon Negligence Per Se, seeking a negligence per se jury instruction at the time this case is tried before a jury.

---

[1] This case is one of five companion cases filed by various plaintiffs against 3M and MSA in the United States District Court for the Eastern District of Missouri.

## II. BACKGROUND FACTS[2]

Plaintiff Robert Firebaugh ("Mr. Firebaugh") was employed at ISP Corporation (and its predecessor company GAF Corporation), located in Annapolis, Missouri from February 28, 1966, until 2005. According to Plaintiffs, in February 2005, Mr. Firebaugh was removed from his employment because of his diagnosis of silicosis, an occupational lung disease caused by inhalation of silica dust. Defendants, however, dispute that Mr. Firebaugh has silicosis. The Parties also disagree as to how long Mr. Firebaugh wore a MSA Dustfoe 66 respirator while working for ISP Corporation, if at all. Plaintiffs state that Mr. Firebaugh wore a MSA Dustfoe 66 respirator every day that he worked at ISP Corporation, from February 24, 1966, until at least 1974, and possibly until 1977 or 1978. However, Defendant MSA argues that testimony by the plaintiffs in the companion cases does not support Plaintiffs' assertion that the MSA Dustfoe 66 was worn until 1977 or 1978, rather they assert that the mask was worn only until the early 1970s. Defendant MSA also asserts that some evidence suggests that Mr. Firebaugh never actually wore a MSA Dustfoe 66 respirator at all.

The MSA Dustfoe 66 is an air purifying respirator that was initially certified and approved by the United States Bureau of Mines under 30 C.F.R. Part 14 (1955) ("Schedule 21A") on October 25, 1955. The approval number granted to the MSA Dustfoe 66 by the Bureau of Mines under Schedule 21A was "2166." Under Schedule 21A, the Bureau of Mines reserved "the right to rescind for cause any approval granted under this part." The Bureau of Mines continued to

---

[2] The Court's recitation of the facts is based on Plaintiff's Statement of Uncontroverted Material Facts [doc. #72] and Statement of Facts and Response to Plaintiffs' Statement of Uncontroverted Material Facts in Support of MSA's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment Based Upon Negligence Per Se [doc. #88]. The Court also considered the exhibits submitted by the Parties, where appropriate.

2

extend the approval of the respirator under Schedule 21A until at least February 26, 1971.[3] The MSA Dustfoe 66 was subsequently approved under 30 C.F.R. Part 14 (1965) ("Schedule 21B") on October 15, 1970. The approval number granted to the MSA Dustfoe 66 by the Bureau of Mines under Schedule 21B was "21B-113." Under Schedule 21B, the Bureau of Mines reserved "the right to rescind, for cause, any certificate of approval issued under this part." The MSA Dustfoe 66 was also approved by the National Institute for Occupational Safety and Health (NIOSH) under 30 C.F.R. Part 11 on February 21, 1975. Under 30 C.F.R. Part 11, the Bureau of Mines and NIOSH reserved "the right to jointly revoke, for cause, any certificate of approval issued pursuant to the provisions of this part." At no time was the MSA Dustfoe 66's approval rescinded or revoked under any of the relevant regulatory schedules.

Plaintiffs assert that the MSA Dustfoe 66 used by Mr. Firebaugh did not have a protective covering over its exhalation valves, in violation of 30 C.F.R. part 14.23(b)(2) (1965). However, Defendant MSA argues that neither Schedule 21A nor Schedule 21B actually required a protective covering over exhalation valves, because the MSA Dustfoe 66 was certified by the Bureau of Mines under Schedules 21A and 21B absent such covering over the exhalation valves. Plaintiffs also assert that the MSA Dustfoe 66 was in violation of 30 C.F.R. part 14.23 (b)(2) (1965), because it did not have a means designed to prevent inward leakage of contaminated air. However, Defendant MSA states that the MSA Dustfoe 66 is an air purifier respirator that was

---

[3]On February 26, 1971, the Bureau of Mines granted an Extension of approval 2166, but the extension related to the use of the Schedule 21A approved mask with a filter approved under Schedule 21B.

designed, tested, and approved to provide protection against pneumoconiosis[4] producing dusts, including silica. The respirator was tested under government regulatory standards, and received and maintained certification and approval from the relevant agencies for passing these tests, including tests specifically as to the efficiency of the respirator in preventing the leakage or penetration of contaminated air. Defendant MSA points out that the respirator allegedly used by Mr. Firebaugh was certified by the Bureau of Mines under Schedule 21A and 21B and by NIOSH under 30 C.F.R. part 11, and this certification was never revoked.

Plaintiffs assert that there were several tests performed on the MSA Dustfoe 66 which indicated that the respirator could malfunction. Specifically, Plaintiffs state that NIOSH testing of the MSA Dustfoe 66, which occurred on June 19-20, 1972, concluded that two respirators leaked 3.0 milligrams of silica and one respirator leaked 5.4 milligrams of silica, in violation of 30 C.F.R. part 14.31(a)(v) (1965). Plaintiffs also state that testing performed by the Los Alamos Scientific Laboratory on behalf of NIOSH concluded that the MSA Dustfoe 66 had a tendency toward exhalation valve malfunction. According to Plaintiffs, NIOSH told MSA that the MSA Dustfoe 66 had a design deficiency which included potential field leakage between the metal body and the rubber face piece.

Defendant MSA disputes each of these assertions by Plaintiffs. First, Defendant MSA argues that, with respect to the June 19-20, 1972 testing, Plaintiffs took the results out of context and failed to acknowledge the questionable quality of the test. Second, with respect to the Los Alamos Scientific Laboratory testing, Defendant MSA acknowledges that the lab did notify MSA

---

[4]"Pneumoconiosis" is defined as "[i]nflammation commonly leading to fibrosis of the lungs caused by the inhalation of dust incident to various occupations." Stedman's Medical Dictionary 1391 (26th ed. 1995).

that the exhalation valve on the MSA Dustfoe 66 could become stuck in the open position, but MSA states that it was never able to duplicate the problem and they successfully worked with the lab to ensure that the problem would not recur in the future. Moreover, Defendant MSA points out that the Los Alamos Scientific Laboratory findings are irrelevant in this case, as Plaintiffs have not asserted that the MSA Dustfoe 66 respirator allegedly used by Mr. Firebaugh had similar problems with the exhalation valve getting stuck, an easily identifiable issue. Finally, with respect to Plaintiffs' allegations regarding design deficiencies in the MSA Dustfoe, Defendant MSA states that despte any language that might have been used regarding potential points for leakage, there were no actual leakage points detected over the certification history of the product and it maintained continuous certification and approval. Thus, Defendant MSA argues that the MSA Dustfoe 66 that was allegedly used by Mr. Firebaugh for a short part of his career, before he switched to the 3M 8710 disposable mask, was an effective respiratory protection device when used properly in accordance with instructions and approval limitations.

## III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any

material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof on a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavits and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002); Fed. R. Civ. P. 56(e)(1). The non-moving party does not need to produce "evidence in a form that would be admissible at trial in order to avoid summary judgment"; "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." *Celotex*, 477 U.S. at 324.

To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-

6

moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**IV.     DISCUSSION**

Plaintiffs filed the pending Motion for Partial Summary Judgment, seeking a determination by this Court that Defendant MSA's delay in obtaining approval under Schedule 21B amounted to negligence per se, entitling Plaintiffs to a jury instruction on negligence per se at the time of trial.

First, the Court must address Defendant MSA's argument that Plaintiffs cannot bring a negligence per se claim before this Court because they failed to plead it in their Complaint. The Court disagrees. Federal Rule of Civil Procedure 8(a), which governs pleading standards, requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." In this case, Plaintiffs included a statement in their Complaint that can be construed to notify Defendants of their reliance on a negligence per se theory. In Count VI of Plaintiffs' Complaint [doc. #1], Plaintiffs allege,

> Despite its actual or constructive knowledge that its Dustfoe respirator posed an unreasonable risk of harm, Mine Safety Appliances . . . failed to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

The mention of Defendant MSA's alleged failure to manufacture a respirator that complied with federal certification regulations is sufficient to meet the pleading requirements. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318-19 (2005) ("The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.")

7

The Court now turns to Plaintiffs' arguments regarding the merits of their negligence per se claim. Under Missouri law,

> A claimant may proceed on a negligence per se claim "if the following four elements are met: (1) There was, in fact, a violation of the statute; (2) The injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) The injury complained of was of the kind the statute was designed to prevent; and (4) The violation of the statute was the proximate cause of the injury."

*Sill v. Burlington N. R.R.*, 87 S.W.3d 386, 392 (Mo. Ct. App. 2002) (quoting *King v. Morgan*, 873 S.W.2d 272, 275 (Mo. Ct. App. 1994)). While Plaintiffs set forth arguments with respect to each of these elements, Defendant MSA focuses its attention on the first element, violation of a statute (or federal regulations in this case). The Court will focus on this element, as well.

Plaintiffs argue that there was a clear violation of federal regulations in this case because Defendant MSA did not seek approval for the MSA Dustfoe 66 under Schedule 21B, which became effective on January 21, 1965, until October 15, 1970. These federal regulations are relevant to the present dispute as a result of Section 292.320 of Missouri Revised Statutes, which was in effect at all times relevant to this dispute, and which provides:

> in all processes of manufacture or labor referred to in this section which are productive of noxious or poisonous dusts, adequate and approved respirators shall be furnished and maintained by the employer in good condition and without cost to the employees, and such employees shall use such respirators at all times while engaged in any work productive of noxious or poisonous dusts.

The pertinent language in this statute is "adequate and approved respirators shall be furnished . . . ," which raises the question of what qualifies as an approved respirator. The answer is dictated by the regulations set forth by the United States Bureau of Mines in 30 C.F.R. Part 14. These are the regulations with which Plaintiffs assert the MSA Dustfoe 66 failed to comply.

8

The problem with Plaintiffs' argument is that they have pointed to no authority, nor is this Court aware of any, establishing that manufacturers of respirators were required to seek approval under the new set of regulations (contained in Schedule 21B) immediately after those regulations were adopted. Nor, is there any provision establishing that the approvals granted under the previous set of regulations (contained in Schedule 21A) were no longer valid when the new set of regulations (contained in Schedule 21B) was adopted. To the contrary, the undisputed evidence in this case is that the MSA Dustfoe 66 was approved under Schedule 21A. The Bureau of Mines reserved the right to rescind said approval, but the approval was never rescinded. If Mr. Firebaugh used a MSA Dustfoe 66 respirator at all at his job prior to the mid-1970s, the MSA Dustfoe 66 respirator that he used was approved under Schedule 21A until at least February 26, 1971, and was approved under Schedule 21B as of October 15, 1970. Thus, during the time that Mr. Firebaugh allegedly used the MSA Dustfoe 66, from February 28, 1966 to sometime in the early 1970s[5], the respirator that he was using was an "approved" respirator, as required by Missouri law.

Plaintiffs also assert that even after the MSA Dustfoe 66 was approved under Schedule 21B, the respirator remained non-compliant because it leaked in excess of the limit prescribed by 30 C.F.R. § 14.31(a)(v), and because it did not have a protective covering over the exhalation valve as required by 30 C.F.R. § 14.23(b)(2). There are several problems with this argument.

---

[5]Plaintiffs allege that Mr. Firebaugh used the MSA Dustfoe 66 for a longer period of time than Defendants allege, specifically until 1974 at the earliest, and perhaps through 1977 or 1978. However, this alleged fact is clearly disputed by Defendant MSA, and the Court is required to adopt MSA's version of the facts for the purpose of this Motion. *See Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996) ("like the district court, we must construe the evidence in the light most favorable to the nonmoving party") (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

First and foremost, Plaintiffs' assertions regarding the non-compliance of the MSA Dustfoe 66 are heavily disputed by Defendants in this case. Because "summary judgment is not appropriate where material facts remain in dispute," the Court cannot rely on these assertions by Plaintiffs to grant summary judgment in their favor. Additionally, as explained above, Missouri law only requires the provision of approved respirators to employees. Even if Plaintiffs' allegations are true, neither the Bureau of Mines nor NIOSH revoked their approval of the MSA Dustfoe 66 as a result of the compliance issues, and the respirator retained its "approved" status throughout the time period in question. Thus, the Court must conclude that the aforementioned compliance problems asserted by Plaintiffs do not constitute a violation of federal regulations sufficient to warrant summary judgment in favor of Plaintiffs on their negligence per se claim.

The Court finds that Plaintiffs have failed to establish the existence of at least one of the elements of their negligence per se claim, violation of a statute (or federal regulations, as in this case), without relying on disputed facts. The Court need not address the additional elements of negligence per se, and finds that summary judgment is not appropriate on the issue of negligence per se.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment Against Mine Safety Appliances ("MSA") Based Upon Negligence Per Se [doc. #71] is **DENIED**.

Dated this 6th Day of October, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE